**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Rozich, | No. CV-23-00210-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| MTC Financial Incorporated, et al., | |
| Defendants. | |

Pending before the Court is a motion to set aside default filed by Defendant First Citizens Bank & Trust Co., dba CIT Bank, NA ("First Citizens"). (Doc. 39.) The motion is fully briefed. (Docs. 44, 45.) For the following reasons, the motion is granted. As a result, Plaintiff's pending motions for a default judgment and prevailing-party attorneys' fees against First Citizens (Docs. 36, 37) are denied as well.

**RELEVANT BACKGROUND**

On December 13, 2022, Plaintiff commenced an action in Maricopa County Superior Court by filing a complaint. (Doc. 8 at 11-16.) The three named defendants were First Citizens, MTC Financial, Inc. ("MTC"), and LoanCare, LLC ("LoanCare"). (*Id.*) Although the complaint is not a model of clarity as to the specific claims being asserted, it appears to assert two claims, "Breach of contract, intentional tort" (*id.* at 11), and to seek compensatory damages, punitive damages, and an injunction barring "the trustee's sale of [Plaintiff's] Property set for December 14, 2022" (*id.* at 15).

Shortly after filing the complaint, Plaintiff sought and obtained a temporary

restraining order ("TRO") that enjoined the then-impeding trustee's sale of Plaintiff's property. (Doc. 42-1 at 2-5.)

On January 11, 2023, Plaintiff served First Citizens with the state-court complaint, a summons, the TRO, and certain other documents. (Doc. 27-2.)

On the morning of January 12, 2023, the state-court judge held a hearing at which Plaintiff's counsel was present but Defendants were not present. (Doc. 42-1 at 2-3.) The minute entry from that hearing concludes as follows: "IT IS ORDERED continuing the Temporary Restraining Order. The Court states that it will wait until 4:30 p.m. on January 31, 2023 to verify service of process was effectuated on Defendants. At that time if affidavits of service are available, the Court will issue a preliminary injunction that will remain in effect throughout the duration of the case. . . . 9:10 a.m. Matter concludes." (*Id.* at 3.)

Later that same day—at 12:25 p.m., to be exact—Plaintiff filed proof of service as to First Citizens, MTC, and LoanCare with the state-court clerk. (Docs. 27-1, 27-2, 27-3.)

On January 31, 2023, LoanCare removed this action to federal court. (Doc. 1.)

On March 6, 2023, the state-court judge issued an order explaining that, because "the matter was removed to federal court" "before this Court could issue any [preliminary injunction] order," "IT IS ORDERED holding this case in abeyance at this time until the matter is either resolved at the federal level or returned back to this Court." (Doc. 42-1 at 5.)

On March 8, 2023, Plaintiff filed a stipulation of dismissal as to MTC, which was granted. (Docs. 16, 19.)

On April 7, 2023, Plaintiff filed his operative pleading, the First Amended Complaint ("FAC"). (Doc. 21.) As relevant here, the FAC added new claims against First Citizens that had not been included in the original complaint, including claims under the Real Estate Settlement Procedures Act ("RESPA") and the Truth In Lending Act ("TILA"). (Doc. 20-1 at 18-20.)[1]

---

[1] Plaintiff has acknowledged elsewhere that the FAC added new claims against First Citizens. (Doc. 31 at 3 ["The [FAC] was more than a restyling of facts, but also added

- 2 -

On May 22, 2023, LoanCare moved to dismiss the claims against it in the FAC. (Doc. 25.) The motion later became fully briefed. (Doc. 26.)

On October 26, 2023, the Court granted LoanCare's motion to dismiss. (Doc. 28.) Later, after Plaintiff declined to file a Second Amended Complaint as authorized in the dismissal order, the Court dismissed LoanCare. (Doc. 29.)

On November 14, 2023, the Court issued an order to show cause ("OSC") why Plaintiff's claims against First Citizens should not be dismissed for failure to prosecute. (Doc. 30.)

On November 28, 2023, Plaintiff filed a response to the OSC. (Doc. 31.) Plaintiff affirmed his intent to pursue his claims against First Citizens, acknowledged that he "inadvertently failed to effectuate service of the [FAC] on [First Citizens]," and expressed his "hopes the Court will allow some additional time to effectuate the service of the [FAC] of [First Citizens] and opportunity to respond." (*Id.* at 2.)

On November 29, 2023, the Court deemed the OSC satisfied but ordered Plaintiff to promptly serve First Citizens and file proof of service. (Doc. 32.)

On December 8, 2023, Plaintiff filed a proof of service indicating that First Citizens had been served with the FAC on December 5, 2023. (Doc. 33.)

On December 20, 2023, MTC recorded a notice of trustee's sale with the Maricopa County Recorder, indicating that a trustee's sale of Plaintiff's property was scheduled for March 27, 2024. (Doc. 42-1 at 7.)

On December 21, 2023, Plaintiff filed an application for default as to First Citizens. (Doc. 34.)

On December 28, 2023, the Clerk entered default against First Citizens. (Doc. 35.)

On March 8, 2024, Plaintiff filed motions for default judgment and attorneys' fees against First Citizens. (Docs. 36, 37.)

That same day, counsel for Plaintiff and First Citizens began exchanging emails regarding the planned trustee's sale, with Plaintiff taking the position that the state-court

additional claims."].)

- 3 -

TRO "remains enforceable" (Doc. 42-1 at 12) and First Citizens taking the position that "[we] do not agree that a temporary restraining order issued by the Superior Court in December, 2022 has remained in effect for the last 15 months notwithstanding removal of the case to United States District Court" (Doc. 42-2 at 12).

On March 15, 2024, notwithstanding that disagreement, First Citizens agreed to postpone the trustee's sale to May 1, 2024. (Doc. 42-2 at 24.) Additionally, First Citizens informed Plaintiff that it "would likely be open to a further postponement pending the outcome of litigation." (*Id.* at 12.)

On March 18, 2024, First Citizens filed a motion to set aside the default. (Doc. 39.) That same day, First Citizens filed a response to the motion for default judgment. (Doc. 41.)

On March 21, 2024, Plaintiff filed a motion for expedited relief concerning the trustee's sale. (Doc. 42.)

On March 22, 2024, the Court issued an order requiring expedited briefing as to First Citizens' motion to set aside default and staying the briefing as to Plaintiff's motions for default judgment and attorneys' fees. (Doc. 43.)

On March 26, 2024, Plaintiff filed an opposition to First Citizens' motion to set aside default. (Doc. 44.)

On March 28, 2024, First Citizens filed a reply in support of its motion to set aside default. (Doc. 45.) Neither side requested oral argument.

**DISCUSSION**

I.   Legal Standard

Under Rule 55(c) of the Federal Rules of Civil Procedure, the Court "may set aside an entry of default for good cause." To determine whether good cause exists to vacate an entry of default, the Court considers the three *Falk* factors:[2] "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen,* 739 F.2d 461, 463 (9th

---

[2]   Courts "consistently" refer to these factors as the "*Falk* factors." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011)

Cir. 1984). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). "Crucially, however, judgment by default is a drastic step appropriate only in extreme circumstances;[3] a case should, whenever possible, be decided on the merits." *Id.* (quotation marks omitted). The movant "bears the burden of proving the existence of a justification" to set aside the default. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).

The decision whether to vacate the entry of default "is committed to the discretion of the district courts" and is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011). "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). "[W]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974). The same reasoning applies—with at least as much force—to relief from entry of default.

---

[3] In *Mesle*, the Ninth Circuit faulted the district court for "omitt[ing] any mention of the 'extreme circumstances' requirement for judgment by default," which was "no minor omission," as "it fundamentally altered the standard, turning the court's attention to everyday oversights rather than to whether there were any extreme circumstances." 615 F.3d at 1091. Nevertheless, the Ninth Circuit subsequently clarified that "[t]he 'extreme circumstances' policy language was intended to remind courts that default judgments are the exception, not the norm, and should be viewed with great suspicion," and courts should "keep this policy concern in mind," but courts are not required "in addition to applying [the] three [*Falk*] factors, to articulate why a particular case presents 'extreme circumstances.'" *United States v. Aguilar*, 782 F.3d 1101, 1106 (9th Cir. 2015). Rather, "faithful application of the *Falk* factors ensures that default judgments will stand only in extreme circumstances." *Id.* "For example, if a claimant has no meritorious defense . . . , then it is unclear what a further inquiry into 'extreme circumstances' would accomplish." *Id. See also Gregorian v. Izvestia*, 871 F.2d 1515, 1526 (9th Cir. 1989) ("'Extraordinary circumstances' analysis has in fact been supplanted by the three-part [*Falk*] test . . . . Therefore, the district court's determination that the case does not present 'extraordinary circumstances' does not support its refusal to set aside the default judgment under Rule 60(b)(6).").

*Mendoza*, 783 F.2d at 945.

II.     Analysis

Having considered the parties' arguments and the *Falk* factors, the Court concludes the default against First Citizens should be set aside.

As for the first *Falk* factor, a plaintiff is prejudiced if his ability to pursue his claim has been "hindered" due to delay resulting in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001). "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Id.* "[M]erely being forced to litigate on the merits cannot be considered prejudicial." *Id.*

Here, Plaintiff's prejudice arguments (Doc. 44 at 10-11) ring hollow in light of the unusual procedural posture of this case. Although Plaintiff served First Citizens with the complaint and summons in January 2023, Plaintiff took no steps to pursue his claims against First Citizens over the next 10 months, eventually prompting the Court to issue an OSC in November 2023 why those claims should not be dismissed for failure to prosecute. (Doc. 30.) In response, Plaintiff belatedly affirmed his intention to pursue his claims against First Citizen but acknowledged he had not served the FAC on First Citizens. (Doc. 31.) The FAC was not served until December 2023 and default was not entered until later that month. (Docs. 33, 35.) Even assuming the default was properly entered despite Plaintiff's failure to serve a new summons alongside the FAC,[4] First Citizens' delay in

---

[4] Because Plaintiff properly served First Citizens with the original complaint and summons on January 11, 2023, when this action was still pending in state court (Doc. 27-2), First Citizens was required to respond to the complaint by early February 2023. *See* Fed. R. Civ. P. 81(c). Once First Citizens failed to do so, Plaintiff could have applied for a default under Rule 55(a). Plaintiff did not do so. Instead, more than two months after removal, Plaintiff filed the FAC, which added new claims against First Citizens that were not asserted in the original complaint. As a result, and as Plaintiff acknowledged in his response to the OSC, Plaintiff was required to serve First Citizens with the FAC "under Rule 4." (Doc. 31 at 3, quoting Fed. R. Civ. P. 5(a)(2).) Rule 4(c), in turn, provides that "[a] summons must be served with a copy of the complaint." However, when Plaintiff served First Citizens with the FAC on December 5, 2023, his process server did not also serve a summons. (Doc. 33.) According to First Citizens, this means the default should not have been entered at all. (Doc. 39 at 6.)

- 6 -

responding to the FAC was relatively short (and pales in comparison to the nearly year-long period in which Plaintiff failed to prosecute his claims against First Citizens). There is no reason to believe that memories have faded and evidence has disappeared due to First Citizens' conduct.

Turning to the second *Falk* factor, "[a] defendant seeking to vacate a default judgment must present specific facts that would constitute a defense," but "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Mesle*, 615 F.3d at 1094. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense"—the truth of those facts is "the subject of the later litigation." *Id.* Nevertheless, "conclusory statements" will not suffice, and a "mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). "A complete lack of meritorious defenses itself constitutes an extreme circumstance." *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015). Setting aside default "in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). When the movant makes "no showing of a meritorious defense," it would be "an abuse of discretion to set aside the entry of default." *Id.*

First Citizens has easily met its burden of identifying a meritorious defense. First Citizens has enclosed, as an attachment to its motion, a draft Rule 12(b)(6) motion to dismiss all of Plaintiff's claims in the FAC. (Doc. 39 at 31-37.) Among other things, the draft motion argues that Plaintiff's Arizona Consumer Fraud Act ("ACFA") and RESPA claims must be dismissed because they fail to state a claim. (*Id.* at 35-36.) In an earlier order in this case, the Court accepted variants of those same arguments when dismissing Plaintiff's ACFA and RESPA claims against LoanCare. (Doc. 28.) Plaintiff acknowledges this "ruling . . . will likely apply to [First Citizens] as well." (Doc. 44 at 10.) Although Plaintiff goes on to argue that the Court should nevertheless resolve the second *Falk* factor

against First Citizens, because the earlier ruling "has become the law of the case without any effort by [First Citizens], and [First Citizens] should not be rewarded by allowing it to take the defense of another" (*id.* at 9), the Court respectfully disagrees that this is how the second *Falk* factor operates—all that First Citizens was required to do was identify a meritorious defense and it has done so.

Finally, under the third *Falk* factor, "[a] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (brackets omitted). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* (quotation marks omitted). A defendant is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Id.* However, "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions *may* be assumed, and with it, intentionality." *Id.* at 1093 (emphasis added).[5] The Court "retains the discretion (but not the obligation) to infer intentionality from the actions of a legally sophisticated party and to thereby find culpability." *Idaho Golf Partners, Inc. v. Timberstone Mgmt. LLC*, 2015 WL 1481396, *4 (D. Idaho 2015). "A district court may exercise its discretion to deny

---

[5] The Ninth Circuit in *Mesle* noted that this "is not the ordinary standard for Rule 55(c) and 60(b) motions"—the standard which is "consistent with" the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394-95 (1993), which held that "an inadvertent or negligent omission" could establish excusable neglect. 615 F.3d at 1092-93; *see also TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001) ("To suppose that the making of a conscious choice, without more, precludes a finding that 'neglect' is 'excusable' cannot be squared with *Pioneer Investment*.").

- 8 -

relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not." *Brandt*, 653 F.3d at 1112. "[W]here the defendant has a meritorious defense and any prejudice can be cured," a court's finding that the defendant "acted culpably [does] not preclude it, as a matter of law" from granting relief under Rule 60(b)(1) or Rule 55(c). *Id.*

Much of the parties' briefing, which includes references to a cybersecurity event that purportedly afflicted First Citizens' statutory agent in December 2023, concerns whether First Citizens' conduct should be considered culpable. The Court finds it unnecessary to decide the culpability issue in light of how the first and second *Falk* factors were resolved. Even assuming First Citizens' conduct was culpable—First Citizens makes no effort to explain its failure to respond to the initial complaint after being served in January 2023—the Court would exercise its discretion to set aside the default given the lack of prejudice to Plaintiff, the existence of meritorious defenses, and the principle that "doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits." *Schwab*, 508 F.2d 353 at 355.

Accordingly,

**IT IS ORDERED** that:

1. First Citizens' motion to set aside default (Doc. 39) is **granted**.

2. The Clerk shall **set aside** the default against First Citizens (Doc. 35).

3. First Citizens shall, within 14 days of the issuance of this order, answer or otherwise respond to the FAC.

4. Plaintiff's motions for default judgment and attorneys' fees (Docs. 36, 37) are **denied**.

Dated this 29th day of March, 2024.

Dominic W. Lanza
United States District Judge