**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Rozich,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MTC Financial Incorporated, et al.,<br><br>　　　　　Defendants. | No. CV-23-00210-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff's "Expedited Motion To Preclude Trustee Sale And For Order To Show Cause As To Why CIT Is Not In Violation Of Order Precluding Trustee Sale." (Doc. 42.) The motion is fully briefed. (Docs. 47, 48.) For the following reasons, the motion is denied.

**RELEVANT BACKGROUND**

On December 13, 2022, Plaintiff commenced an action in Maricopa County Superior Court by filing a complaint. (Doc. 8 at 11-16.) The three named defendants were First Citizens Bank & Trust Co., dba CIT Bank, NA ("First Citizens"), MTC Financial, Inc. ("MTC"), and LoanCare, LLC ("LoanCare"). (*Id.*) Although the complaint is not a model of clarity as to the specific claims being asserted, it appears to assert two claims, "Breach of contract, intentional tort" (*id.* at 11), and it seeks compensatory damages, punitive damages, and an injunction barring "the trustee's sale of [Plaintiff's] Property set for December 14, 2022" (*id.* at 15).

Shortly after filing the complaint, Plaintiff sought and obtained a temporary

restraining order ("TRO") that enjoined the then-impeding trustee's sale of Plaintiff's property. (Doc. 42-1 at 2-5.)

On January 11, 2023, Plaintiff served all three Defendants with the complaint, a summons, the TRO, and certain other documents. (Doc. 27.)

On the morning of January 12, 2023, the state-court judge held a hearing at which Plaintiff's counsel was present but Defendants were not present. (Doc. 42-1 at 2-3.) The minute entry from that hearing concludes as follows: "IT IS ORDERED continuing the Temporary Restraining Order. The Court states that it will wait until 4:30 p.m. on January 31, 2023 to verify service of process was effectuated on Defendants. At that time if affidavits of service are available, the Court will issue a preliminary injunction that will remain in effect throughout the duration of the case. . . . 9:10 a.m. Matter concludes." (*Id.* at 3.)

Later that same day, Plaintiff filed proof of service as to all three Defendants with the state-court clerk. (Docs. 27-1, 27-2, 27-3.)

On January 31, 2023, LoanCare removed this action to federal court. (Doc. 1.)

On March 6, 2023, the state-court judge issued an order explaining that, because "the matter was removed to federal court" "before this Court could issue any [preliminary injunction] order," "IT IS ORDERED holding this case in abeyance at this time until the matter is either resolved at the federal level or returned back to this Court." (Doc. 42-1 at 5.)

On March 8, 2023, Plaintiff filed a stipulation of dismissal as to MTC, which was granted. (Docs. 16, 19.)

On April 7, 2023, Plaintiff filed his operative pleading, the First Amended Complaint ("FAC"). (Doc. 21.) However, Plaintiff did not immediately serve the FAC on First Citizens. (Doc. 31 at 2 [acknowledging same].)

On May 22, 2023, LoanCare moved to dismiss the claims against it in the FAC. (Doc. 25.) The motion later became fully briefed. (Doc. 26.)

On October 26, 2023, the Court granted LoanCare's motion to dismiss. (Doc. 28.)

1  Later, after Plaintiff declined to file a Second Amended Complaint as authorized in the
2  dismissal order, the Court dismissed LoanCare. (Doc. 29.)

3        On December 5, 2023, Plaintiff served the FAC on First Citizens. (Doc. 33-1.)

4        On December 20, 2023, MTC recorded a notice of trustee's sale with the Maricopa
5  County Recorder, indicating that a trustee's sale of Plaintiff's property was scheduled for
6  March 27, 2024. (Doc. 42-1 at 7.)

7        On March 8, 2024, counsel for Plaintiff and First Citizens began exchanging emails
8  regarding the planned trustee's sale, with Plaintiff taking the position that the state-court
9  TRO "remains enforceable" (Doc. 42-1 at 12) and First Citizens taking the position that
10 "[we] do not agree that a temporary restraining order issued by the Superior Court in
11 December, 2022 has remained in effect for the last 15 months notwithstanding removal of
12 the case to United States District Court" (Doc. 42-2 at 12).

13       On March 15, 2024, notwithstanding that disagreement, First Citizens agreed to
14 postpone the trustee's sale to May 1, 2024. (Doc. 42-2 at 24.) Additionally, First Citizens
15 informed Plaintiff that it "would likely be open to a further postponement pending the
16 outcome of litigation." (*Id.* at 12.)

17       On March 21, 2024, Plaintiff filed the pending motion for expedited relief
18 concerning the trustee's sale. (Doc. 42.) The Court, in turn, set an expedited briefing
19 schedule. (Doc. 43.)

20       On April 1, 2024, First Citizens filed an opposition. (Doc. 47.)

21       On April 3, 2024, Plaintiff filed a reply. (Doc. 48.) Neither side requested oral
22 argument.

**DISCUSSION**

I.    <u>The Parties' Arguments</u>

      Plaintiff argues the Court should enjoin the trustee's sale of his property, which is
currently scheduled for May 1, 2024, for two related reasons: (1) the TRO issued by the
state-court judge in December 2022 has "remained in effect" over the last 16 months,
because the issuing judge ordered that it would remain in effect until it was converted into

a preliminary injunction (which never happened); and (2) the issuing judge intended to convert the TRO into a preliminary injunction on January 31, 2023 and would have done so but for LoanCare's removal of this action to federal court just before the anticipated conversion date. (Doc. 42 at 2-3.) Plaintiff further argues that CIT has "violate[d] the State Court Orders" by rescheduling the trustee's sale, which constitutes civil contempt, and "[i]f necessary . . . requests an order to show cause hearing be set to show why CIT is not in violation of the State Court Case Orders." (*Id.* at 5-6.)

First Citizens responds that Plaintiff's motion "should be denied because a temporary restraining order expires within 10 days of issuance under Arizona law, no preliminary injunction was ever issued by the Superior Court, and Plaintiff has failed to articulate any cognizable basis on which this Court could issue a preliminary injunction. Additionally, as there is no injunction in effect, Plaintiff's request for entry of an order to show cause regarding the issuance of sanctions against Defendant must similarly be denied." (Doc. 47 at 2.)

In reply, Plaintiff contends that although Arizona law creates a default rule that a TRO expires after 10 days, Arizona law also allows a TRO to be extended for good cause, which existed here. (Doc. 48 at 2.) Plaintiff also reiterates his position that "the Court in the State Court Case had already made its decision to enter the preliminary injunction and said as much in the record. The only reason that the State Court Case did not enter the *formal written order* for preliminary injunction was the removal of this matter to this Court." (*Id.*)

II. Analysis

Plaintiff's motion is denied for the reasons identified by First Citizens. First, the TRO is no longer in effect. Although Plaintiff is correct that Arizona law allows a TRO to be extended beyond 10 days for good cause, the extension can only be "for a like period." Ariz. R. Civ. P. 65(b)(3). A 16-month extension (*i.e.*, from December 2022 to the present) is not a "like period." Tellingly, the issuing judge did not suggest, during the March 6, 2023 hearing, that the TRO remained in effect. To the contrary, the judge stated that the

state-court case would be held "in abeyance . . . until the matter is either resolved at the federal level or returned back to this Court." (Doc. 42-1 at 5.) At any rate, "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal . . . . An ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Granny Goose Foods, Inc. v. B'hd of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 437-40 (1974). And under Federal Rule of Civil Procedure 65(b)(2), a TRO "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Again, 16 months is not a "like period" of extension for an order that otherwise expires after 14 days.

Second, Plaintiff's belief that the state-court judge would have issued a preliminary injunction if not for the removal of this action is a red herring. The bottom line is that no preliminary injunction ever issued. Plaintiff is also incorrect that he has "already established . . . the requirements for obtaining a preliminary injunction." (Doc. 48 at 3.) Under Ninth Circuit law, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotation marks omitted). *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. However, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary

injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quotation and emphasis omitted). Under this serious-questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072. Plaintiff has never attempted to establish that those exacting standards are satisfied here. Plaintiff is, of course, free to attempt to do so through an appropriately developed motion for preliminary injunction, but a cross-reference to the state-court judge's intention to issue a preliminary injunction is not enough.[1]

Third, because the TRO is no longer in effect and no preliminary injunction ever issued, Plaintiff's requests to stay the trustee's sale and for an order to show cause are unavailing—those requests rest on the mistaken premise that an existing court order precluded First Citizens and CIT from rescheduling the trustee's sale.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion (Doc. 42) is **denied**.

Dated this 5th day of April, 2024.

_____
Dominic W. Lanza
United States District Judge

---

[1] The observation that Plaintiff is free to file a motion for preliminary injunction should not be construed as a suggestion to do so. The parties' recent correspondence indicates that First Citizens is open to voluntarily postponing the trustee's sale pending the resolution of this action, which would obviate the need for further injunction-related motions practice. The parties are encouraged to continue meeting and conferring on this issue.