**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Robert Rozich,

           Plaintiff,

v.

MTC Financial Incorporated, et al.,

           Defendants.

No. CV-23-00210-PHX-DWL

**ORDER**

Robert Rozich ("Plaintiff") contacted his loan servicer, LoanCare, LLC ("LoanCare"), to express concerns regarding his ability to make future payments to First Citizens Bank and Trust Company ("CIT") on an outstanding home equity line of credit. In response, LoanCare told Plaintiff he would have to be delinquent for three months before he could apply for hardship relief. However, after Plaintiff went into delinquency based on that advice and then submitted a loan modification application, LoanCare denied relief based on CIT's eligibility requirements. In this action, Plaintiff sued several defendants under an array of legal theories. All of Plaintiff's claims have either been settled or dismissed except for those against CIT.

Now pending before the Court is CIT's motion to dismiss. (Doc. 50.) For the reasons that follow, the motion is granted but Plaintiff is granted leave to amend.

## BACKGROUND

I.   <u>Factual Allegations</u>

The following facts, presumed true, are derived from Plaintiff's operative pleading,

the First Amended Complaint ("FAC").  (Doc. 21.)

Former Defendant MTC Financial Inc. ("MTC") is a California corporation that operates in Arizona.  (*Id.* ¶ 2.)

Defendant CIT is a bank that operates in Arizona.  (*Id.* ¶ 3.)

Former Defendant LoanCare is a company that services loans, including in Arizona.  (*Id.* ¶ 4.)

On July 31, 2007, Plaintiff obtained a $150,000 home equity line of credit ("the HELOC").  (*Id.* ¶¶ 8, 11.)  The HELOC is secured by a deed of trust ("DOT") on Plaintiff's home in Phoenix.  (*Id.*)  In 2010, the DOT was assigned to CIT.  (*Id.* ¶ 10.)  "The DOT was a Secondary Lien, with a Wells Fargo-Home Mortgage having a secured loan in first position."  (*Id.* ¶ 12.)

The "monthly payment for the Wells Fargo-Home Mortgage loan was . . . $1,377."  (*Id.* ¶ 13.)  The "monthly mortgage payment under the HELOC would fluctuate based on the amount of the interest only payments," with an "estimated average per month paid by Plaintiff" of $1,093.75.  (*Id.* ¶ 14.)

In 2007, "[u]pon obtaining the HELOC, the entire line of credit under the HELOC . . . was placed in Plaintiff's bank account without his permission or knowledge[,] which would require him to pay interest on the entire amount of the HELOC."  (*Id.* ¶ 15.)  Plaintiff "immediately returned the funds to the lender, but already having the interest assessed on the entire amount of the HELOC Plaintiff transferred all of the funds in the HELOC to his account."  (*Id.* ¶ 16.)  "Defendants" then "close[d] the credit line within one . . . year of funding the loan, for reasons not having to do with Plaintiff."  (*Id.* ¶ 17.)

"On or before July of 2018 Plaintiff contacted LoanCare because he foresaw difficulties in making future payments on the HELOC."  (*Id.* ¶ 18.)  "LoanCare informed Plaintiff that he would have to be delinquent three . . . or so months before hardship relief would be granted."  (*Id.* ¶ 19.)  "LoanCare[1] did not discuss with Plaintiff other options

---

[1]     In paragraph 73 of the FAC, Plaintiff suggests that he expected CIT to discuss these options as with him as well, which CIT failed to do.

available, including refinance, so that Plaintiff could remain in good standing and continue his monthly payments without issue." (*Id.* ¶ 21.) "Plaintiff never had been delinquent on the payments for the HELOC." (*Id.* ¶ 20.) "Around this time LoanCare removed Plaintiff's access to the online HELOC account," which meant "Plaintiff could not make or review payments and balances online as he always had before." (*Id.* ¶¶ 22-23.)

"In September of 2018, Plaintiff submitted his Borrower Response Package/Loss Mitigation Application . . . based on the previous instructions from LoanCare to first allow the HELOC payments to become delinquent and apply for relief." (*Id.* ¶ 25.)

On September 21, 2018, LoanCare responded that Plaintiff's application was incomplete. (*Id.* ¶ 26.) Plaintiff then provided additional information. (*Id.* ¶ 27.)

On or around October 30, 2018, LoanCare confirmed in a letter to Plaintiff that the application was complete but also noted that it "encourage[d] [Plaintiff] to consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options." (*Id.* ¶¶ 27, 30.)

On or around November 13, 2018, LoanCare told Plaintiff in a letter that "although [he] may have a hardship, [he] d[id] not qualify for a loan modification." (*Id.* ¶ 32.) The letter stated Plaintiff "was not eligible for a repayment plan, unemployment forbearance, or traditional modification trial, because the HELOC was not a first lien." (*Id.* ¶ 35, internal quotation marks omitted.) The letter also stated that the denial of the application was "based on eligibility requirements of CIT." (*Id.* ¶ 37.) Before this letter, "LoanCare had never informed Plaintiff that because the HELOC was not a first lien, Plaintiff would not qualify under any plan," although it "knew at all times the HELOC was in second position." (*Id.* ¶¶ 36-37.)

In March 2019, Plaintiff submitted a second mitigation application. (*Id.* ¶ 38.) On April 15, 2019, Plaintiff received a second rejection letter from LoanCare, which provided the same explanation that was provided in the first rejection letter. (*Id.* ¶¶ 39, 42, 43.)

In November 2019 and April 2020, LoanCare rejected successive applications from Plaintiff for the same reason. (*Id.* ¶¶ 44-45, 48, 52-53, 56-57.)

In September 2021, Plaintiff enlisted the help of an individual named Charles M. Bartkiewicz to assist him with his fifth application. (*Id.* ¶¶ 60-62.) In an October 15, 2021 letter, LoanCare informed Bartkiewicz that it "does not offer refinancing," so "the only options for Plaintiff were to reinstate the account . . . , a short sale, or a discounted pay off." (*Id.* ¶¶ 62-63.) The October 15, 2021 letter "also for the first time, invite[d] Plaintiff to make a settlement offer for a lien release." (*Id.* ¶ 64.) Bartkiewicz then made three settlement offers on Plaintiff's behalf, but none were accepted, and CIT "refused to ever provide a counteroffer." (*Id.* ¶¶ 65-66.)

In a May 6, 2022 letter rejecting the second settlement offer, LoanCare stated that "the account remains due for the January 6, 2019, payment and the unpaid principal balance" was $126,407.70. (*Id.* ¶ 66.) In other words, "LoanCare was taking the position that from July 2007 through December 2018, Plaintiff had only paid" $23,592.30 "towards the principal." (*Id.* ¶¶ 66-68.) "After Plaintiff's online access to his account was revoked by Defendants, Plaintiff has never been provided an accounting showing the basis of the unpaid principal balance as . . . $126,407.70." (*Id.* ¶ 70.)

Plaintiff alleges that "LoanCare and CIT purposely prolonged the period that Plaintiff negotiated with the Defendants so that the Plaintiff would be in considerable arrears which would make his ability to obtain new financing from any institution increasingly difficult to impossible." (*Id.* ¶ 71.) "During the entirety of this process, Defendants negatively reported each late payment destroying Plaintiff's good credit rating." (*Id.* ¶ 72, internal quotation marks omitted.) "Had LoanCare and/or CIT initially told Plaintiff to offer an amount for a discounted payoff and release of lien instead of advising [him] to resubmit multiple applications, then either a settlement could have been reached or Plaintiff would still have been in a position to obtain new financing with CIT or [an]other lender based on his then good credit and equity." (*Id.* ¶ 73.)

II.   <u>Procedural History</u>

On December 13, 2022, Plaintiff commenced this action in Maricopa County Superior Court. (Doc. 1 ¶ 1.)

- 4 -

Shortly after filing the complaint, Plaintiff obtained a temporary restraining order ("TRO") to enjoin the then-impeding trustee's sale of Plaintiff's home.  (Doc. 42-1 at 2-5.)

On January 31, 2023, LoanCare removed the action to this Court.  (Doc. 1.)

On March 9, 2023, after Plaintiff and MTC announced they had reached a settlement (Doc. 16), the Court dismissed all of Plaintiff's claims against MTC.  (Doc. 18.)

On April 7, 2023, Plaintiff filed the FAC.  (Doc. 21.)  The FAC asserts five claims against LoanCare and CIT: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the Arizona Consumer Fraud Act ("ACFA"); (4) violation of the Real Estate Settlement Procedures Act ("RESPA"); and (5) violation of the Truth in Lending Act ("TILA").  (*Id.* ¶¶ 74-106.)

On May 22, 2023, LoanCare moved to dismiss the FAC.  (Doc. 25.)

On October 26, 2023, the Court granted LoanCare's motion to dismiss.  (Doc. 28.)

On November 13, 2023, after Plaintiff declined to file a Second Amended Complaint as authorized in the dismissal order, the Court dismissed LoanCare.  (Doc. 29.)

On November 14, 2023, the Court issued an order to show cause ("OSC") why Plaintiff's claims against CIT should not be dismissed for failure to prosecute.  (Doc. 30.)

On November 28, 2023, Plaintiff filed a response to the OSC.  (Doc. 31.)  Plaintiff affirmed his intent to pursue his claims against CIT, acknowledged that he "inadvertently failed to effectuate service of the [FAC] on [CIT]," and expressed his "hopes the Court will allow some additional time to effectuate the service of the [FAC] of [CIT] and opportunity to respond."  (*Id.* at 2.)

On November 29, 2023, the Court deemed the OSC satisfied but ordered Plaintiff to promptly serve CIT and file proof of service.  (Doc. 32.)

On December 8, 2023, Plaintiff filed a proof of service indicating that CIT had been served with the FAC on December 5, 2023.  (Doc. 33.)

On December 20, 2023, MTC recorded a notice of trustee's sale with the Maricopa County Recorder, indicating that a trustee's sale of Plaintiff's property was scheduled for March 27, 2024.  (Doc. 42-1 at 7.)

On December 21, 2023, Plaintiff filed an application for default as to CIT.  (Doc. 34.)  The Clerk later entered the default against CIT.  (Doc. 35.)

On March 8, 2024, Plaintiff filed motions for default judgment and attorneys' fees against CIT.  (Docs. 36, 37.)

That same day, counsel for Plaintiff and CIT began exchanging emails regarding the planned trustee's sale, with Plaintiff taking the position that the state-court TRO "remains enforceable" (Doc. 42-1 at 12) and CIT taking the position that "[we] do not agree that a temporary restraining order issued by the Superior Court in December, 2022 has remained in effect for the last 15 months notwithstanding removal of the case to United States District Court" (Doc. 42-2 at 12).

On March 15, 2024, notwithstanding that disagreement, CIT agreed to postpone the trustee's sale to May 1, 2024.  (Doc. 42-2 at 24.)  Additionally, CIT informed Plaintiff that it "would likely be open to a further postponement pending the outcome of litigation."  (*Id.* at 12.)

On March 18, 2024, CIT filed a motion to set aside the default.  (Doc. 39.) That same day, CIT filed a response to the motion for default judgment.  (Doc. 41.)

On March 21, 2024, Plaintiff filed a motion for expedited relief concerning the trustee's sale.  (Doc. 42.)

On March 22, 2024, the Court issued an order requiring expedited briefing as to CIT's motion to set aside default and staying the briefing as to Plaintiff's motions for default judgment and attorneys' fees.  (Doc. 43.)

On March 29, 2024, after full expedited briefing (Docs. 44, 45), the Court granted CIT's motion to set aside the default and denied Plaintiff's motions for default judgment and attorneys' fees.  (Doc. 46.)

On April 5, 2024, after full briefing (Docs. 47, 48), the Court denied Plaintiff's expedited motion to preclude the trustee's sale.  (Doc. 49.)

On April 12, 2024, CIT filed the pending motion to dismiss the FAC.  (Doc. 50.) The motion is now fully briefed (Docs. 52, 55) and neither side requested oral argument.

**DISCUSSION**

I.    <u>Legal Standard</u>

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When evaluating a Rule 12(b)(6) motion, "all well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (quoting *Ashcroft*, 56 U.S. at 678). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.   <u>Count One—Breach Of Contract</u>

A.    **The Parties' Arguments**

In Count One of the FAC, Plaintiff asserts a claim for breach of contract. (Doc. 21 ¶¶ 74-83.) The FAC alleges that the underlying contract was the DOT, that LoanCare acted as CIT's agent with respect to the DOT, and that CIT (via LoanCare) breached the DOT in three ways: (1) CIT "breached [its] duty to provide only a line of credit able to be used on a revolving nature by initially advancing the full amount of the HELOC without Plaintiff's knowledge or consent, then closing it altogether"; (2) CIT "breached [its] duty to apply all Plaintiff's payments in the required order"; and (3) CIT "breached [its] duty by not providing a notice of acceleration and opportunity for Plaintiff to reinstate his account or bring court action to defend acceleration and/or sale." (*Id.*)

CIT argues that Count One should be dismissed because Plaintiff "fails to allege

what provisions of the alleged contract [CIT] breached, and fails to allege, with any specificity whatsoever, any damages that resulted from such a breach." (Doc. 50 at 3.) CIT also argues that "Plaintiff fails to allege, with any specificity whatsoever, how his payments were misapplied and fails to allege that his loan was accelerated or that foreclosure proceedings were initiated." (*Id.* at 3-4.)

Plaintiff responds that the FAC "goes into great detail as to most of these areas, and if not, can be cured with a simple amendment." (Doc. 52 at 4.) Plaintiff also argues that, under the DOT, CIT had a duty "to provide a line of credit able to be used on a revolving nature, which [CIT] did not do for the entire time of the HELOC." (*Id.*) Plaintiff next argues that CIT breached its contractual duties by failing "to apply all Plaintiff's payments in a certain order,"[2] by failing "to provide an accounting," and by failing "to provide a notice of acceleration and opportunity for Plaintiff to reinstate his account or bring court action to defend acceleration and/or sale . . . ." (*Id.*) Plaintiff argues that these duties "derive" as a matter of "common sense" from unspecified "provisions" within the DOT and that the FAC's "allegations, taken as whole, provide [CIT] with the requisite notice under Rule 8, Fed.R.Civ.P." (*Id.* at 4-5.) Regarding damages, Plaintiff argues that the FAC alleges damages with sufficient specificity in the form of "unpaid principal, excess fees, accrued interest, attorney fees and costs, and other compensatory, consequential, and statutory damages as applicable." (*Id.* at 5.) In support, Plaintiff cites *Seven Words LLC v. Network Sols.*, 260 F.3d 1089 (9th Cir. 2001). *Id.* Plaintiff argues that unless CIT can show prejudice from the lack of a more detailed computation of damages at this stage, he need not produce such a computation until discovery. (*Id.*)

CIT reiterates its arguments in its reply and adds that Plaintiff's allegation in paragraph 15 of the FAC that a breach occurred in 2007 when the "full amount" was "initially advanced" cannot succeed because "the statute of limitations for a breach of contract action is six years." (Doc. 55 at 2.)

---

[2]    Paragraph 78 of the FAC lists the appropriate order as: "1. Prepayment charges; 2. Amounts due on the Account to secure advances; Escrow payments; 4. Late charges; 5. Finance charges and other fees; 6. Accrued finance charges; and 7. Principal balance."

B.     **Analysis**

A breach of contract claim has three elements under Arizona law: (1) the existence of a contract, (2) its breach, and (3) resulting damages.  *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975).

The Court agrees with CIT that the FAC's allegations are insufficient to establish the second element of breach.  Plaintiff alleges that certain duties arose from the DOT as a matter of "common sense," including the duty to provide a line of credit on a "revolving nature" (Doc. 21 ¶ 77), to apply payments in a particular order (*id.* ¶ 78), and to provide notice of acceleration and/or sale (*id.* ¶ 79).  However, Plaintiff does not provide a copy of the DOT as an attachment to the FAC and fails to tether his allegations to any particular provision within the DOT.  Additionally, even assuming CIT might owe the alleged duties to Plaintiff under the DOT, the FAC does not plead any facts suggesting that CIT breached those duties—the FAC does not, for example, explain how CIT failed to provide credit of a "revolving nature," how CIT misapplied the payments, or how a failure to abide by the payment application order listed in paragraph 78 of the FAC caused Plaintiff harm.  Nor does Plaintiff allege that CIT had a duty under the DOT to provide a proper "accounting."  Dismissal for failure to state a claim is warranted under these circumstances.  *See, e.g.*, *Kramer v. Ocwen Loan Servicing LLC*, 2014 WL 1827158, *5 (D. Ariz. 2014) ("Kramer makes reference to the Deed of Trust only once in his complaint, and has neither attached a copy nor identified any relevant sections.  Kramer does not allege any particular breach of that contract, nor does he allege any benefit under that contract that was impaired. . . . [N]othing in the Deed of Trust guarantees Kramer the right to receive truthful information about the loan modification process.  Kramer has failed to identify benefits due under the loan origination contract or how Defendants impaired those benefits with the requisite specificity."); *Ripa v. Fed. Nat. Mortg. Ass'n*, 2013 WL 5705426, *4 (D. Ariz. 2013) ("Plaintiff does not explain, however, how the actions of Defendants breached the Note and Deed of Trust.  Indeed, Plaintiff makes reference to the Deed of Trust only once in his Complaint and has neither attached a copy nor identified any relevant sections.  Plaintiff

does not allege any particular breach of that contract, nor does he allege any benefit under that contract that was impaired."); *Schultz v. BAC Home Loans Servicing, LP*, 2011 WL 3684481, *3 (D. Ariz. 2011) ("Plaintiff has pointed to no authority showing she was owed any accounting on the note, nor provided the Court with any evidence that any payments she made were not, in fact, credited to her.  For all these reasons, Plaintiff has failed to state a claim for relief in Count One.").[3]

III.    Count Two—Breach Of The Implied Covenant Of Good Faith And Fair Dealing

A.    **The Parties' Arguments**

In Count Two of the FAC, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing.  (Doc. 21 ¶¶ 84-88.)  The FAC alleges that the underlying contract was the DOT and that "Defendants have a long history into the present of committing wrongful acts against borrowers, including those complained of by the Plaintiff, including failure to provide a proper accounting, purposely not applying or misapplying payments, not informing Plaintiff [of] his rights as required under the DOT, constantly telling Plaintiff to submit another application knowing it will be denied because it is a second lien, not informing Plaintiff that LoanCare cannot 'refinance' until October 2021, and not negotiating in good faith to purposely cause delay all the while negatively reporting to credit agencies so Plaintiff has no hope of refinancing with any lender."  (*Id.* ¶ 86.)  The FAC continues: "Defendants' actions to mislead and deceive Plaintiff into default so that his application would be granted, knowing the applications would be denied, all the while negatively reporting to credit agencies, and forever ruining his opportunity to refinance, was an act of malice, purposely and knowingly done to harm Plaintiff."  (*Id.* ¶ 87.)

CIT moves to dismiss Count Two because Plaintiff "fails to explain what acts or omissions of [CIT] allegedly breached the implied covenant of good faith and fair dealing,

---

[3]    Given this determination, it is unnecessary to resolve CIT's other arguments as to why Count One should be dismissed, including the statute-of-limitations argument raised for the first time in CIT's reply.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

1    and fails to describe how an alleged breach by [CIT] prevented him from receiving the

2    benefits and entitlements of the deed of trust in question." (Doc. 50 at 4.)  CIT also argues

3    that "Plaintiff's allegations are entirely conclusory, devoid of specificity, and [Plaintiff]

4    fails to allege, with any specificity whatsoever, what damages he allegedly suffered as a

5    result of [CIT's] alleged conduct." (*Id.*)

6        Plaintiff responds that, in paragraph 86 of the FAC, he "was specific to all of [CIT's]

7    actions and non-actions in support of his claim for breach of good faith and fair dealing."

8    (Doc. 52 at 6.)

9        In reply, CIT reiterates its earlier arguments and also identifies the statute of

10   limitations as a reason why Plaintiff should be required to provide further details about the

11   challenged acts (and whether they occurred within the statutory period).  (Doc. 55 at 2-3.)

12       B.    **Analysis**

13       "Arizona law implies a covenant of good faith and fair dealing in every contract."

14   *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1186 (Ariz. Ct. App. 2016).  "The covenant

15   requires that neither party do anything that will injure the right of the other to receive the

16   benefits of their agreement." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1038

17   (Ariz. 1985).  "[A] party may . . . breach its duty of good faith without actually breaching

18   an express covenant in the contract." *Wells Fargo Bank v. Arizona Laborers, Teamsters*

19   *& Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002).

20       The Court agrees with CIT that Plaintiff has not pleaded a valid claim for breach of

21   the implied covenant.  Many of the allegations in paragraph 86 of the FAC are simply

22   vague, conclusory labels—for example, that CIT has committed "wrongful acts" and was

23   "not negotiating in good faith." (Doc. 21 ¶ 86.)  These are not well-pleaded facts and are

24   not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 678-80.  Moreover, the implied

25   covenant does not exist to vindicate "some unspecified notion of fairness." *Villegas v.*

26   *Transamerica Fin. Servs., Inc.*, 708 P.2d 781, 784 (Ariz. Ct. App. 1985).  In light of

27   Plaintiff's failure to provide a copy of the DOT or at least plead concrete details about its

28   provisions, Plaintiff has failed to plausibly establish that CIT's conduct deprived him of

specific benefits flowing from the DOT. *Schwartz v. Chase Home Fin., LLC*, 2010 WL 5151326, *2 (D. Ariz. 2010) ("[E]ven if plaintiff contended that Chase breached its duty of good faith and fair dealing implied in the Deed of Trust, plaintiff fails to allege that Chase acted to impair any of plaintiff's contract benefits. Because plaintiff has not provided us with the Deed of Trust, we have no way of knowing the contract benefits to which plaintiff was entitled. Because plaintiff's complaint does not contain sufficient factual matter, which, if accepted as true, would state a claim for relief that is plausible on its face, the claim must be dismissed.") (cleaned up).

Other allegations in the FAC, although more specific, are simply not covered by the implied covenant. For example, the allegation that CIT failed to "inform[] Plaintiff that LoanCare cannot refinance until October 2021" (Doc. 21 ¶ 86) does not establish that CIT deprived Plaintiff of any benefit flowing from the DOT. It merely identifies an action that Plaintiff views as unfair, and Plaintiff does not allege that the DOT contains a provision that entitles him to the right to receive truthful information about the loan modification process. *Cf. Kramer*, 2014 WL 1827158 at *5 (dismissing implied-covenant claim because "nothing in the Deed of Trust guarantees [the plaintiff] the right to receive truthful information about the loan modification process"). Similarly, although the FAC alleges that CIT failed to "negotiat[e] in good faith to purposely cause delay" (Doc. 21 ¶ 86), "the implied covenant of good faith and fair dealing does not extend to negotiation." *Vera v. Wells Fargo Bank*, N.A., 2011 WL 334286, *3 (D. Ariz. 2011). Nor does CIT failing "to provide a proper accounting" violate any alleged benefit flowing from the DOT to Plaintiff. Finally, as for the allegation that CIT "negatively report[ed] to credit agencies" (Doc. 21 ¶ 86), Plaintiff once again fails to show how such conduct might conceivably deprive him of a benefit flowing from the DOT. *Vera*, 2011 WL 334286 at *3 (dismissing implied-covenant claim where "plaintiff has not pled facts suggesting that Wells Fargo was obligated to refrain from reporting to the credit bureaus").

For these reasons, Count Two is dismissed.[4]

_____

[4]     As with Count One, this conclusion makes it unnecessary to reach CIT's other

III.   <u>Count Three—ACFA</u>

    A.   **The Parties' Arguments**

In Count Three of the FAC, Plaintiff asserts a claim for consumer fraud in violation of the ACFA.  (Doc. 21 ¶¶ 89-94.)  Plaintiff alleges that "Defendants partook in deceptive and unfair acts and/or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of material facts with intent that Plaintiff rely on such concealment, suppression or omission, in connection with advising Plaintiff to allow the HELOC to go into default for roughly three (3) months, advising Plaintiff to fill out multiple applications, knowing they would not be granted for the same reason that the HELOC was a second lien, not informing Plaintiff of certain rights, [and] not informing Plaintiff that LoanCare could not 'refinance' until much later and too late."  (*Id.* ¶ 90.)  Plaintiff also alleges fraud in relation to a $10 monthly fee.  (*Id.* ¶¶ 91-92.)

CIT seeks dismissal of Count Three because "the alleged 'advisements' were not made in connection with the 'sale or advertisement of merchandise,' Plaintiff fails to allege that he actually relied on such advertisements, Plaintiff fails to allege that he suffered any alleged injury as a proximate cause of such advertisements, and Plaintiff fails to allege the injuries that he suffered with specificity."  (Doc. 50 at 5.)  CIT also argues that "Plaintiff's claim for violation of A.R.S. § 6-635 fails because it does not apply to the HELOC loan in question pursuant to A.R.S. § 6-602."  (*Id.*)

In response, Plaintiff does not dispute any of these points and states that he understands that Count Three is "likely subject to dismissal."  (Doc. 52 at 7.)

    B.   **Analysis**

Given Plaintiff's non-opposition, and for the reasons stated in an earlier order dismissing Count Three as to LoanCare (Doc. 28 at 7-9), Count Three is dismissed.

IV.   <u>Count Four—RESPA</u>

    A.   **The Parties' Arguments**

In Count Four of the FAC, Plaintiff asserts a claim for violating RESPA.  (Doc. 21

---

dismissal arguments related to Count Two.

¶¶ 95-101.)  More specifically, the FAC alleges that CIT violated 12 C.F.R. § 1024.39(b). (Doc. 21 ¶¶ 96.)[5]

CIT seeks dismissal of Count Four for three reasons: (1) § 1024.39(b) "does not confer upon borrowers a private right of action against lenders"; (2) § 1024.39(b) "only applies to delinquent borrowers, and Plaintiff has failed to allege that he is a delinquent borrower"; and (3) Plaintiff fails to allege the damages he suffered from the violation with "any specificity whatsoever."  (Doc. 50 at 5-6.)

Plaintiff responds to CIT's first argument by citing the Court's previous order granting LoanCare's motion to dismiss, in which the Court declined to rule on whether § 1024.39(b) confers a private right of action because Plaintiff had failed to allege the required damages resulting from the § 1024.39(b) violation.  (Doc. 52 at 7.)  Plaintiff now concedes that he has failed to allege such damages and seeks leave to do so.  (*Id.* at 7-8.) In response to CIT's second argument, Plaintiff argues that by elsewhere in the FAC admitting default and indebtedness, he has effectively alleged that he was a delinquent borrower.  (*Id.*)

CIT reiterates its arguments in reply.  (Doc. 55 at 4-5.)

B.    **Analysis**

Because Plaintiff concedes he failed to plead damages resulting from a RESPA violation, Count Four is dismissed.

V.    Count Five—TILA

A.    **The Parties' Arguments**

In Count Five of the FAC, Plaintiff asserts a claim for violating TILA.  (Doc. 21 ¶¶ 102-06.)  After alleging that "[s]ervicers are required to implement qualified loss mitigation plan[s] based on standard industry practice" pursuant to "the guidelines issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of

---

[5]    Although the FAC also includes allegations regarding 12 C.F.R. § 1024.41(d) (Doc. 21 ¶ 98), Plaintiff does not defend the sufficiency of that portion of Count Four in his response and concedes it is "likely subject to dismissal."  (Doc. 52 at 8.)  Accordingly, the analysis here is limited to the parties' dispute over 12 C.F.R. § 1024.39(b).

2008," Plaintiff alleges that "LoanCare, for the first time, after almost three (3) years of dealings, specifically stated in the October 21, 2021, letter that refinancing was not an available option because it was a servicer." (*Id.* ¶¶ 103, 105.) According to Plaintiff, this resulted in unspecified "violations of TILA." (*Id.* ¶ 106.)

CIT argues that Count Five should be dismissed because it "fails to allege that [CIT] violated any specific provision of TILA, and fails to allege any specific damages that he suffered as a result of an alleged violation of TILA by [CIT]." (Doc 50 at 6.)

In response, Plaintiff argues that the FAC was not intended to allege a claim based directly on a violation of TILA. (Doc. 52 at 8-9.) According to Plaintiff, the FAC was not intended to allege that the Home Affordable Modification Program ("HAMP") guidelines, such as 15 U.S.C. § 1639a(c), create a legal duty, but rather that the guidelines "describe a duty of care that was not met by [CIT], and that the standard of care is set forth by [those guidelines], to include a loan modification, workout, or other loss mitigation plan, a loan sale, real property disposition, trial modification, pre-foreclosure sale, and deed in lieu of foreclosure, and a refinancing of a mortgage." (*Id.* at 9.) Plaintiff thus contends that Count Five is "based on negligence" and seemingly argues that CIT owed him a duty "to offer certain programs," which it then breached "by not offering the entirety of the programs." (*Id.*) Plaintiff cites *Markle v. HSBC Mortg. Corp. (USA),* 844 F. Supp. 2d 172 (D. Mass. 2011), to support this theory and requests leave to amend to better explain that theory. (*Id.*)

In its reply, CIT reiterates its earlier arguments and adds that *Markle* supports its contention that 15 U.S.C. § 1639a(c) does not create a legal duty "to comply with HAMP guidelines or else face lawsuits." (Doc. 55 at 5.)

B. **Analysis**

The Court agrees with CIT that Count Five is subject to dismissal. As an initial matter, only the most liberal reading of the FAC could support Plaintiff's contention that Count Five is not a claim arising directly under § 1639a(c)—in which case it would be subject to dismissal—but rather is a negligence claim and merely seeks to use the guidelines referenced in § 1639a(c) to set the standard of care. Nowhere does the FAC

mention negligence.  Moreover, paragraph 103 of the FAC provides that "[s]ervicers are required to implement qualified loss mitigation plan[s] . . . as set forth by the guidelines" and paragraph 106 provides that Plaintiff's damages were as "a result of [CIT's] violations of TILA."  This language suggests that CIT's alleged violations of TILA—not its breach of any otherwise-owed duty—form the basis of Plaintiff's claim.

But even assuming Plaintiff was attempting to assert a negligence claim, he has not alleged with sufficient specificity the source of CIT's otherwise-owed duty to comply with § 1639a(c).  If Plaintiff meant to suggest the source of this duty is the DOT, then the FAC fails to allege this with sufficient specificity for all of the reasons stated earlier regarding Counts One and Two.  Courts have not hesitated to dismiss similar claims.  *Wright v. Chase Home Fin. LLC*, 2011 WL 2173906, *1 (D. Ariz. 2011) (granting motion to dismiss where "Plaintiff asserts that HAMP amended her note and deed of trust to impose additional duties on defendants"); *Short v. Chase Home Fin. LLC*, 2011 WL 9160941, *3 (D. Ariz. 2011) (granting motion to dismiss, even though "Plaintiffs assert that they have not brought suit to enforce HAMP," because "this assertion is belied by the complaint's allegations . . . [which] make clear . . . that the central issue in this case is Chase's compliance with HAMP").

For these reasons, Count Five is dismissed.  *See also Mollett*, 795 F.3d at 1065 (dismissal may be based on "a lack of a cognizable legal theory").

VI.   Leave to Amend

A.   **The Parties' Arguments**

CIT asks the Court to dismiss without leave to amend because any amendment would be futile: "Plaintiff fails to allege any wrongful acts or omissions on the part of [CIT], save, perhaps the alleged denial of 'applications' . . . and it is entirely unclear as to how a denial of applications for loan modification or otherwise would give rise to a claim against Defendant."  (Doc. 50 at 7.)

Plaintiff requests leave to amend in the event of dismissal and argues that CIT "does not adequately explain why an amendment could not cure [CIT's] allegations that the FAC

1    does not allege wrongful acts or omissions."  (Doc. 52 at 10.)

2          **B.**      **Analysis**

3          Rule 15(a) of the Federal Rules of Civil Procedure "advises the court that 'leave [to

4    amend] shall be freely given when justice so requires.'"  *Eminence Cap., LLC v. Aspeon,*

5    *Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).  "This policy is 'to be applied

6    with extreme liberality.'"  *Id.* (citation omitted).  Thus, leave to amend should be granted

7    unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3)

8    produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v.*

9    *Dialysist W.*, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

10         Applying these standards, Plaintiff's request for leave to amend is granted.  As the

11   Court noted when granting Plaintiff's request for leave to amend the FAC in the aftermath

12   of LoanCare's successful motion to dismiss (which raised many of the same arguments

13   that CIT raises here), "[a]lthough LoanCare may be correct that any amendment attempt

14   would be futile, as Plaintiff's claims against LoanCare are being dismissed based on legal

15   deficiencies that, as far as the Court can tell, could not be cured through the pleading of

16   additional facts, the policy of extreme liberality underlying Rule 15(a) counsels in favor of

17   giving Plaintiff one more chance at amendment."  (Doc. 28 at 17.)

18         …

19         …

20         …

21         …

22         …

23         …

24         …

25         …

26         …

27         …

28         …

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Accordingly,

**IT IS ORDERED** that:

1.    CIT's motion to dismiss (Doc. 50) is **granted**.

2.    Plaintiff may file a Second Amended Complaint ("SAC") as to CIT within 14 days of the issuance of this order.  Any changes shall be limited to attempting to cure the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

3.    If Plaintiff does not file a SAC within 14 days of the issuance of this order, the Clerk shall dismiss CIT as a Defendant and, because CIT is the last remaining Defendant, the Clerk shall then enter judgment accordingly and terminate this action.

Dated this 9th day of October, 2024.

Dominic W. Lanza
United States District Judge